IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                              )
KEITH AND COURTNEY NAHIGIAN,  )
                              )
                              )
      Plaintiffs,             )
                              )
                              )    1:09cv725 (JCC)
                              )
                              )
JUNO LOUDOUN, LLC AND         )
THE RITZ-CARLTON COMPANY, LLC )
                              )
      Defendants.             )
                              )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Juno
Loudon, LLC's Motion to Dismiss Counts I (fraud) and III
(violation of the Virginia Consumer Protection Act) [Dkt. 34]
and Motion for Summary Judgment as to Count II (violation of the
Interstate Land Sales Act) [Dkt. 37] along with Defendant Ritz-
Carlton Hotel, Company LLC's Motion to Dismiss all counts [Dkt.
41].  The Court heard argument on these motions on October 21,
2009 and has since reviewed the additional authorities submitted
by the parties thereafter.  For the following reasons, the Court
will deny Defendant Juno Loudoun, LLC's Motion to Dismiss, will
deny Defendant Juno Loudon, LLC's Summary Judgment Motion, and
deny Defendant Ritz-Carlton Hotel Company, LLC's Motion to
Dismiss.

# I. **Background**

The facts and allegations in the Amended Complaint are set forth as follows. In May 2005, The Ritz-Carlton Company, LLC ("Ritz") had entered into a Transaction Agreement with Juno-Loudon ("Juno") where it agreed to manage "the process and standards utilized by Broker and its personnel in the marketing and sale of the lots. . ." (Amend. Compl. ¶ 6.) for a real estate development called "The Estates at Creighton Farms" in Loudon County, Virginia (Amend. Compl. ¶ 2). In the spring of 2007, the Plaintiffs, Keith and Courtney Nahigian (the "Nahigians" or "Plaintiffs") began a search for single-family home that "was unique in value" and "would provide first-class recreational amenities." (Amend. Compl. ¶ 10.) Plaintiffs, responding to a radio advertisement for a "Ritz-Carlton community", visited "Creighton Farms" (the "Development") on a number of occasions. (Amend. Compl. ¶¶ 11-12.) The Development was presented to the Plaintiffs by, what the Plaintiffs call in their Amended Complaint, a "Juno-Loudon/Ritz-Carlton representative" ("Juno/Ritz representative") as a private "Ritz-Carlton community" that provided its residents with the following amenities: the opportunity to join a private Jack Nicklaus-designed Ritz-Carlton golf club adjacent to the community ("Golf Club"), a "Ritz Kids" day care facility for

children, restaurants, management, and social events that met
Ritz-Carlton standards, and "reciprocal privileges" at other
Ritz-Carlton resorts around the world.  (Amend. Compl. ¶¶ 13-
14.)

Before entering into the Agreement, Plaintiffs made
multiple visits to the Development and also twice visited
another Ritz-Carlton community located in Jupiter, Florida.
(Amend. Compl. ¶¶ 15, 19.)  During these visits, "Juno/Ritz"
also provided Plaintiffs with multiple items bearing the
Development's name and Ritz's logo.  (Amend. Compl. ¶ 16.)
Indeed, the Ritz-Carlton logo was "stamped all over the
Community, including on the stone façade entrance facing the
highway." (Amend. Compl. ¶ 20).  The Juno/Ritz representative
also gave Plaintiffs promotional materials prominently
displaying and discussing Ritz's management relationship with
the Community.  (Amend. Compl. ¶¶ 15, 16, 18.)  Further, "[i]n
response to a specific question from the Nahigians," "Juno/Ritz"
assured them that Ritz "was under contract for thirty years to
manage the Community and would be able to renew the contract
after that time."  (Amend. Compl. ¶ 17.)  Finally, the
"Juno/Ritz representative" informed Plaintiffs that "The Ritz-
Carlton Club & Spa" in Jupiter, Florida was an example of "The
Ritz-Carlton Life," that Juno had the same partnership with Ritz
as did the Jupiter property, and that the Plaintiffs would get

the "same services and amenities" as in Jupiter and have
"reciprocal rights with Ritz locations such as in Jupiter."
(Amend. Compl. ¶ 18.)   The Amended Complaint alleges that
cumulative oral and written statements affirmed the same
representation: that the Development was a "Ritz-Carlton
community" which presently held a long-term and fully binding
agreement with Ritz to impact and benefit all aspects of the
Community experience" and labels this assertion "the False
Statement."   (Amend. Compl. ¶ 21.)

On June 1, 2007, Plaintiffs, in reliance on the False
Statement, signed a Purchase Agreement (the "Agreement")
((Amend. Compl. ¶ 24; Amend. Compl. Ex. B (Agreement)) and,
closed on the Property, an unimproved parcel at 22616 James
Monroe Highway, Aldie, Virginia 20105, in Loudoun County,
Virginia (the "Property") under the terms of the Agreement on
July 1, 2007. (Amend. Compl. ¶ 25.)   Juno continued to represent
itself as a "Ritz-Carlton Managed Community" in an advertisement
appearing in a magazine in the fall of 2008.   (Amend. Compl. ¶
26.)   These representations regarding Ritz's role in the
Community continued after the Agreement was signed until March
11, 2009, when Plaintiffs received an e-mail from the
Community's office manager, informing them that Ritz would no
longer be affiliated with the Golf Club.   (Amend. Compl. ¶ 24-

28; *see also* Amend. Compl. Ex. C (Mar. 11, 2009 letter from Community).)

Plaintiffs now allege that there is not and never has been a relationship between Juno and Ritz for property management, concierge or spa services, reciprocal privileges, or for anything more than temporary management of the Golf Club. (Amend. Compl. ¶ 31.) Plaintiffs also believe that representatives of "Juno/Ritz" intentionally made the false statement and intended that the statement be relied upon. (Amend. Compl. ¶ 21.)

Plaintiffs originally filed a Complaint stating claims under Virginia law and seeking $2.5 million dollars in damages against Juno and Ritz, in the Circuit Court of Loudoun County, Virginia (Circuit Court) which was served on the parties on June 2, 2009. On July 1, 2009, Ritz filed a notice of removal of this action under 28 U.S.C. §§ 1441(b) and 1332 from the Circuit Court, and jurisdiction is proper before this Court. Juno consented to this motion the same day. On July 10, 2009, Plaintiffs moved to remand this action to the Circuit Court. Ritz opposed the motion on July 24, 2009. In addition, both Juno and Ritz filed Motions to Dismiss the claims against them on July 2, 2009. Before this Court could hear argument on those motions, Plaintiffs filed an Amended Complaint on August 28, 2009. In the wake of this filing, the Court issued its

September 28, 2009 Order denying Plaintiffs' Motion to Remand
and denying without prejudice the Defendants' Motions to
Dismiss.

On October 2, 2009 Defendants filed the instant
Motions. Defendant Juno filed a Motion to Dismiss Counts I and
III and a separate Motion for Summary Judgment as to Count II.
Defendant Ritz filed a Motion to Dismiss the Amended Complaint
in its entirety. On October 13, 2009 Plaintiffs filed
Oppositions to all Motions and on October 19, 2009 Defendants'
replied. These motions are now before the Court.

## II. **Standard of Review**

A. **Motion to Dismiss**

1. Federal Rule of Civil Procedure 9(b)

Counts I and III of the Complaint allege fraud, thus
these claims are subject to Federal Rule of Civil Procedure Rule
9(b), which requires that claimants plead fraud with
particularity.[1] Fed. R. Civ. P. 9(b); *Harrison v. Westinghouse
Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).
Particularity requires that claimant state "the time, place and
contents of the false representations, as well as the identity
of the person making the misrepresentation and what he obtained
thereby." *Harrison*, 176 F.3d 784 *citing* 5 Charles Alan Wright

---

[1] Rule 9(b) states: "In all averments of fraud or mistake, the circumstances
constituting fraud or mistake shall be stated with particularity. Malice,
intent, knowledge, and other condition of mind of a person may be averred
generally." Fed. R. Civ. P. 9(b).

and Arthur R. Miller, *Federal Practice and Procedure: Civil §*
*1297* at 590 (2d 1990).  In the Fourth Circuit, a court will
"hesitate to dismiss a complaint under Rule 9(b) if the court is
satisfied (1) that the defendant[s] [have] been made aware of
the particular circumstances for which [they] will have to
prepare a defense at trial, and (2) that plaintiff has
substantial pre-discovery evidence of those facts."  *Harrison*,
176 F.3d at 784.

   2.   Federal Rule of Civil Procedure 12(b)(6)

   A Rule 12(b)(6) Motion to Dismiss tests the legal
sufficiency of the complaint.  *See Randall v. United States*, 30
F.3d 518, 522 (4th Cir. 1994) (citation omitted).  In deciding a
Motion to Dismiss, "the material allegations of the complaint
are taken as admitted."  *Jenkins v. McKeithen*, 395 U.S. 411, 421
(1969) (citation omitted).  Moreover, "the complaint is to be
liberally construed in favor of plaintiff."  *Id.*

   Recently, the Supreme Court has stated that "to
survive a motion to dismiss, a complaint must contain sufficient
factual matter, accepted to be true, to 'state a claim to relief
that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct.
1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550
U.S. 544, 557 (2007).  A claim has factual plausibility when
"the plaintiff pleads factual content that allow the court to
draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937,

1949 (2009) (*quoting Twombly*, 550 US at 570).

**B.  Summary Judgment**

Defendant Juno has moved for Summary Judgment as to

Count II.  Summary judgment is proper "if the pleadings, the

discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."

*Triton Marine Fuels Ltd., S.A. v. M/V PACIFIC CHUKOTKA*, 575 F.3d

409, 412 (4th Cir. 2009) *citing* Fed. R. Civ. P. 56(c); *see also*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986);

*Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59

(4th Cir. 1996).  The existence of a scintilla of evidence or of

unsubstantiated conclusory allegations, however, is insufficient

to avoid summary judgment.  *Anderson*, 477 U.S. at 248-52.  The

party seeking summary judgment has the initial burden to show

the absence of a material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986).  A genuine issue of material fact exists

"if the evidence is such that a reasonable jury could return a

verdict for the non-moving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  To defeat a properly supported

motion for summary judgment, the non-moving party "must set

forth specific facts showing that there is a genuine issue for

trial."  *Id.* (quotation omitted).  The facts shall be viewed,

and all reasonable inferences drawn, in the light most favorable
to the non-moving party. *Id.* at 255; *see also Lettieri v.
Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III. Analysis

Plaintiffs' Amended Complaint states three causes of
action against both parties: Count I, for fraud, Count II, for
violations of 15 U.S.C. § 1701 *et seq* ("ILSA"), and, Count III,
for violations of the Virginia Consumer Protection Act ("VCPA").
Defendant Juno responds with two separate motions: (A) a Motion
to Dismiss Counts I and III; and, (B) a Motion for Summary
Judgment as to Count II. Defendant Ritz-Carlton responds with a
Motion to Dismiss the Amended Complaint. As Counts I and III
are both claims for fraud and both parties have moved to
dismiss, the Court will address them together under Fed. R. Civ.
P. 9(b) and 12(b)(6). The Court will then address Ritz
Carlton's Motion to Dismiss Count and Juno's Motion for Summary
Judgment Count II under the appropriate standards.

### A. Claims for Fraud

As noted above, Plaintiffs bring Count I (fraud) and
Count III (violations of the VCPA) against Defendants who have
moved to dismiss. The Court will address the merits of the
Motions to Dismiss these counts in turn.

1. <u>Count I: Fraud</u>

In Virginia, to succeed on a claim for fraud, a party must show "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005) (citations omitted). Defendants present a number of arguments why the Plaintiffs have not pleaded facts sufficient to overcome a motion to dismiss on this count, however, Defendants have chosen to file separate motions with both duplicative and independent arguments for dismissal. The Court has parsed these arguments as follows.

   a.  *Rule 9(b) Particularity Requirement*

To overcome a Motion to Dismiss a claim for fraud in the Fourth Circuit, each element of fraud must be plead with the required degree of specificity identifying "at a minimum . . . the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation. . . ." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008); Fed. R. Civ. P. 9(b). Rule 9(b) has four purposes:

   First, the rule ensures that the defendant[s] ha[ve]
   sufficient information to formulate a defense by putting
   [them] on notice of the conduct complained of. . . .
   Second, Rule 9(b) exists to protect defendants from
   frivolous suits. A third reason for the rule is to

eliminate fraud actions in which all the facts are learned
after discovery.  Finally, Rule 9(b) protects defendants
from harm to their goodwill and reputation.

*Harrison,* 176 F.3d at 784.  A district court should "hesitate to
dismiss a complaint under Rule 9(b)" when the "defendant[s] have
been made aware of the particular circumstances for which [they]
will have to prepare a defense" and that the plaintiff has
demonstrated "substantial pre-discovery evidence of those
facts."  *Id.*

Here, Plaintiffs allegations, taken as true, state
that in the spring of 2007, "Juno/Ritz representatives"
repeatedly affirmed to them the cumulative "False Statement"
that there was a "long-term and fully binding agreement" between
the defendants "that would impact and benefit all aspects of the
Community experience." (Amend. Compl. ¶ 21.)[2]  Plaintiffs claim
that these representations were false and knowingly made with
intent to induce Plaintiffs to purchase a property in the
community.  (Amend. Compl. ¶¶ 22-23.)  They further claim that
the misrepresentation did so induce them, to their detriment.
(Amend. Compl. ¶¶ 22-25.)

Defendants argue that the Court should dismiss Count I
because Plaintiffs have failed to comply with the pleading
requirements of Rule 9(b).  Specifically stating that "despite
pleading numerous conclusory allegations, the Nahigians have

---

[2] The Court has summarized the various statements and representations alleged
against "Juno/Ritz" in Section I above and will not do so again.

failed to identify the persons who made the alleged [f]alse [s]tatement, let alone the time and place it was made." (Juno's Motion to Dismiss ("Juno's Mot. to Dis.") 9) (*citing Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Defendants provide no authority, however, supporting s requirement that Plaintiffs must allege the full name of each specific "Juno/Ritz" representative, the exact date and time of each of the numerous visits made to the Development when the misrepresentations were made. In both *Harrison* (176 F.3d at 784) and *Padin v. Oyster Point Dodge* (397 F. Supp. 2d 712, 715 n.7) (E.D. Va. 2005)), it was sufficient that the plaintiff had named the entity, though not the specific person, making the misrepresentations. At minimum, after reviewing the specific allegations and listening to argument on the issue, this Court finds that the Defendants are amply aware of the "particular circumstances for which [they] will have to prepare a defense" and have demonstrated "substantial pre-discovery evidence of those facts." *Harrison,* 176 F.3d at 784. In light of this finding, and because the purposes of Rule 9(b) have been met[3], this Court will not dismiss Count I of the Amended Complaint under Rule 9(b).

---

[3] *Harrison,* 176 F.3d at 784

b. *Rule 12(b)(6): Failure to State a Claim*

Defendants further argue that Plaintiff's have not stated a claim upon which relief can be granted. First, Defendants argue that Plaintiff's could not have reasonably relied on the "False Statement" as the Agreement itself "specifically disclaimed reliance" on outside representations. (Ritz Mot. to Dis. 9; Juno Mot. Dis. 8.) As an initial matter, the Court will consider the terms of the Agreement as it is "a written instrument that is an exhibit to a pleading [and] is a part of the pleading for all purposes" in its analysis of the Motion to Dismiss. Fed. R. Civ. P. 10. In the Fourth Circuit, "in the event of a conflict between the bare allegations of the complaint and any exhibit attached pursuant to [Federal] Rule [of Civil Procedure] 10(c) the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir. 1991)(citing 2A Moore's Federal Practice, ¶ 10.06, p.10-24). Thus if a term of the Agreement directly contradicted an allegation in the Amended Complaint regarding that term, the plain language of the contract would prevail.

Defendants' arguments point to three specific paragraphs of the Agreement that appear to vitiate a claim of reasonable reliance by Plaintiffs. Paragraph ten of the Agreement states that the Property is being sold "as is" and that "buyer acknowledges that the seller has made no

representations or warranties regarding the property. . . ."
(Agreement ¶ 10 (Amend. Compl. Ex. B, at 10.))  Paragraph
seventeen, an "integration provision," states that the writing
constitutes the Agreement and that no other representations or
statements are part of the Agreement.  (Agreement ¶ 17 (Amend.
Compl. Ex. B, at 12.))  Finally, paragraph twenty-three (c) of
the agreement states "buyer represents" that they have "not
relied upon any statement verbal or written . . . [including]
advertising and promotional matter. . . and buyer's decision to
purchase is based on personal investigation, observation and the
matters set forth herein."  (Agreement ¶ 23(c)(Amend. Compl.
Exhibit B, at 14.))  Defendants submit that these three clauses
preclude the existence of any misrepresentations or reasonable
reliance by Plaintiffs on "Juno/Ritz's" oral or written
statements.

Plaintiffs respond by arguing, in essence, that the
terms of a contract fraudulently induced cannot preclude a
Plaintiff from bringing suit for that fraud.  The Virginia
Supreme Court has held that "a false representation of a
material fact, constituting an inducement to the contract, on
which the purchaser had a right to rely, is always grounds for
recession of a contract . . . ."  *George Robberecht Seafood,
Inc. v. Maitland Bros. Co.,* 220 Va. 109, 11 (1978).
Furthermore, in Virginia, "a contractual disclaimer of reliance

is not a prophylactic against of claim of fraud." *FS Photo,*

*Inc. v. Picturevision, Inc.* 61 F.Supp.2d 473, 481 (E.D. Va.

1999) (*citing Hitachi*, 166 F.3d 614, 630 (4th Cir. 1999)).

Furthermore, "a merger clause born of a fraud should not be

allowed to immunize the fraudulent conduct; had there been no

fraud there would be no merger clause." *FS Photo*, 61 F.Supp.2d

at 481.  In other words, if an individual is duped into entering

an agreement that same agreement cannot take away the

individual's right to sue for fraud.  At this procedural stage,

the Court will not dismiss Count I on the basis of the language

of the Agreement.  Plaintiffs have sufficiently pleaded that

they were fraudulently induced to enter into the Agreement,

thus, the terms of that Agreement cannot protect (allegedly)

fraudulent parties from responsibility for their actions.[4]

Defendants further argue that Plaintiffs could not

rely on the representations because "under Virginia law reliance

on a false representation is not justified where the relying

party fails to undertake a prudent investigation."  (Ritz Mot.

_____

[4] Defendants also argue that plaintiffs cannot reasonably rely on "an oral
statement in the face of the plainly contradictory contractual language."
(Juno's Mot. to Dis. 8) (*citing Foremost Guaranty Corp. v. Meritor Sav. Bank,*
910 F.2d 118, 126 (4th Cir. 1990); *see also Fayetteville Investors,* 936 F.2d
at 146 (holding that "in the event of a conflict between the bare allegations
of the complaint and any exhibit attached pursuant to [Federal] Rule [of
Civil Procedure] 10(c) the exhibit prevails")(citing 2A Moore's Federal
Practice, ¶ 10.06, p.10-24).  The language of the Agreement is not *plainly*
contradictory.  The Plaintiffs are alleging that Defendants fraudulently
induced them to purchase the property by stating, in sum, that the property
would be managed by Ritz.  Nowhere in the agreement is there any "plainly
contradictory" language affirmatively stating that it would *not* be managed by
Ritz, rather Defendants are pointing to paragraphs of the Agreement
disclaiming representations during the sales process.

to Dis. 9) (*citing Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614 (4th Cir. 1999). Indeed, Plaintiffs agree that the "touchstone of reasonableness is prudent investigation." (Pls.' Opp. to Ritz Mot. to Dis. 7) (*citing Hitachi,* 166 F.3d at 629-30). Assuming the facts alleged as true Plaintiffs fulfilled their burden of investigation. They made multiple visits to the Property (Amend. Compl. ¶ 15) and were told that Ritz would be managing the property for 30 years. (Amend. Compl. ¶ 17). They were told they would have "reciprocal privileges" at the Ritz resort in Jupiter Florida (Amend. Compl. ¶ 14) and visited *that* property twice (Amend. Compl. ¶¶ 18-19). These and the other allegations in the Amended Complaint are sufficient to demonstrate prudent investigation on behalf of the Plaintiffs.

Second, Defendants argue that there was no "false representation" sufficient to state a claim for fraud. First, Defendants claim that the "false statement" cited in the Amended complaint is "compound, inchoate compilation. . . [and] was not uttered." (Ritz Mot. to Dis. 12.) Thus it cannot be considered a misrepresentation as it is "vague and indefinite in [its] nature and terms, or merely loose, conjectural or exaggerated. . . ." *Tate v. Colony House Builders*, 257 Va. 78, 82 (1999). This Court finds that the Amended Complaint contains clear and specific allegations that a Juno/Ritz representative made numerous definitive and specific oral representations to the

Plaintiffs, including among other things, that the Property
would be a "Ritz-Carlton community" (Amend. ¶ 13), that
Plaintiff would enjoy "reciprocal privileges" at other Ritz-
Carlton resorts (Amend. Compl. ¶ 14), and that Juno and Ritz had
entered into a "contract for thirty years." (Amend. Compl. ¶
17.) The collective "False Statement," Plaintiffs allege is
merely a drafting tool used to simplify the pleadings.

Finally, Defendants argue that there is no "cognizable
misrepresentation because it spoke to contingent future events"
(Ritz Mot. to Dis. 12) and that "fraud must relate to a present
or pre-existing fact, and cannot ordinarily be predicated on
unfilled promises or statements as to future events." *Patrick
v. Summers*, 235 Va. 452, 454 (Va. 1988). That same case also
states, however, that fraud claims *may* be "predicated on
promises which are made with a present intention not to perform
them, or on promises made without any intention to perform
them." *Id*. at 454-455 (citations omitted). The question in
*Patrick* was distinct from the case at bar. There, the court
found that the plaintiff had not presented sufficient evidence
that the defendant "had the intent to defraud at the time he
made the promise. Proof of fraudulent intent at that time was
crucial to the Plaintiffs' case." *Id*. at 456. The Plaintiffs
adequately allege the "present, existing facts" of a
"contractual relationship with Ritz Carlton." (Pls.' Opp. to

Juno Mot. to Dis. 7; Amend. Compl. ¶ 17.)  The false statements and representations as laid out in the Amended Complaint speak to both the future amenities available to the Plaintiffs through Ritz's management but also as to the nature of the "long term" contractual relationship between Defendants contemporaneous with the signing of the agreement.

After setting aside all conclusory allegations, taking as true all remaining allegations and liberally construing the Amended Complaint in favor of the Plaintiffs, *see Jenkins*, 395 U.S. at 421, this Court finds that at this stage of litigation the Plaintiffs have stated a claim to relief that "plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (2009).  The Motions to Dismiss Count I are denied.

2.   Count III: Virginia Consumer Protection Act

Defendants argue that the Amended Complaint fails to state a "plausible claim for relief" under the Virginia Consumer Protection Act ("VCPA").  (Ritz Mot. to Dis. 16) (citing *Iqbal*, 129 S.Ct. at 1949.)  The Virginia Consumer Protection Act of 1977 (VCPA), Va. Code § 59.1-196 *et seq.*, makes it unlawful for a supplier to misrepresent its "goods or services as those of another," *Id.* at § 59.1-200(1), or to misrepresent "the affiliation, connection, or association" of itself or its goods or services, *Id.* at § 59.1-200(3), or to use "any other deception, fraud, false pretense, false promise, or

misrepresentation in connection with a consumer transaction,"
*Id.* at § 59.1-200(14). To properly state a cause of action
under the VCPA, Plaintiff must allege (1) fraud, (2) by a
supplier, (3) in a consumer transaction. *Id.* at § 59.1-200(A);
*Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 456
(E.D. Va. 2009).

As a claim sounding in fraud, Rule 9(b)'s
particularity requirements apply. Defendants reiterate their
argument that Plaintiffs have not adequately alleged the element
of "fraud." The Court's rulings under Rule 9(b) and Rule
12(b)(6) for Count I are equally applicable here: the element of
fraud is sufficiently plead to overcome a motion to dismiss.

Defendant Ritz raises the separate argument that it is
not a "supplier" within the meaning of the VCPA.[5] The Virginia
Code defines "supplier" as: "a seller, lessor or licensor who
advertises, solicits or engages in consumer transactions, or a
manufacturer, distributor or licensor who advertises and sells,
leases or licenses goods or services to be resold, leased or
sublicensed by other persons in consumer transactions." Va.
Code § 59.1-198(C) Ritz cites to a Virginia Circuit Court

---

[5] In spite of their abbreviated pleading Plaintiffs have sufficiently pled
that, in this transaction, Juno is a "supplier" under the meaning of the Act
and involved a "consumer transaction" for "goods or services to be used
primarily for personal, family or household purposes." *See* Va. Code Ann. §
59.1-198. Juno does not dispute these allegations, nor does it address the
VCPA directly. Thus as Count I is properly brought against Juno, Count III
is as well.

opinion for the definition of supplier: "To be classified as a supplier under section 59.1-198(C)[of the VCPA,][defendants] must be either a seller engaged in consumer transaction or a distributor who sells goods or services to be resold to others." *Alvarez v. Dekar Homes, Inc.*, 17 Va. Cir. 250, 1989 WL 646553, at *2 (1989). Plaintiffs respond by citing to two separate Circuit Court opinions holding a real estate agent qualifies as a "supplier" under the VCPA as they are analogous to a "distributor". *See Messer v. Re/Max Properties, Inc.*, 15 Va. Cir. 15 (1985); *Messer v. Shannon Luchs & Co.,* 15 Va. Cir. 18 (1985).

Plaintiff alleges that Ritz "acted as a partner and co-developer to Juno." (Amend. Compl. ¶ 3.) Indeed, the "Juno/Ritz representative" was allegedly acting on behalf of both parties and both Juno and Ritz profited from the sale of the property with Ritz taking 5.5% of all sales (Amend. Compl. ¶ 6). Without the benefit of additional facts it is difficult for this Court to determine the nature of the partnership between Juno and Ritz. Accepting the facts in the Amended Complaint as true, and drawing all inferences their favor, Plaintiffs have pleaded facts sufficient to plausibly state a claim that Defendant Ritz was a "supplier" within the meaning of the VCPA.

## B. Count II: the Interstate Land Sales Full Disclosure Act ("ILSA")

Plaintiffs also assert a claim against both Defendants under the Interstate Land Sales Full Disclosure Act ("Act"), 15 U.S.C. § 1701, *et seq.*[6] The Act is a federal law regulating interstate land sales by developers and their agents who use "instruments of transportation or communication in interstate commerce, or of the mail" and requires registration of certain sales of lots with the Department of Housing and Urban Development. 15 U.S.C. § 1701 *et seq.* Specifically, Plaintiffs allege that Defendants failed to meet the following requirements of the Act: (a) file a "statement of Record" with the HUD Secretary prior to selling the lots; (b) "prepare and furnish the Nahigians with a sufficient "property report";" (c) inform the Nahigians that they had the statutory right to revoke the contract; and, in addition, (d) provide promotional materials consistent with the facts supposed to be represented in the "property report"." (Amend. Compl. ¶¶ 39-40.) The statute provides a "right of revocation" within two years from the signing of the purchase agreement, where the purchaser is not given a ILSA property report. 15 U.S.C. § 1701(c). Defendants make separate motions for the resolution of Plaintiffs claims

---

[6] The Court notes that the Amended Complaint improperly cites to 42 U.S.C. § 1701 which deals with compensation for "war-risk" hazards. For purposes of these motions, the Court will proceed under the ILSFDA statute 15 U.S.C. § 1701(c).

under the Act.  Defendant Juno moves for Summary Judgment while Defendant Ritz moves to dismiss.  The Court will deal with each of these in turn.

### 1.   Defendant Juno's Motion for Summary Judgment

Defendant Juno propounds two arguments in its summary judgment motion articulating why Plaintiffs' claim fails as a matter of law.  Both arguments apply equally to Plaintiffs' claim against Ritz.  First, Defendant argues that the real estate development in question is statutorily exempt from ILSA based on two specific provisions.  The second is a statute of limitations defense.  Plaintiffs oppose both arguments and contend that, at minimum, there are factual issues in dispute. The Court addresses each argument in turn.

### a.   Statutory Exemptions

Juno argues that the Creighton Farms Development at issue here is exempt from the Act's requirements based upon two related exemptions: the "Sales to Builders" exemption and the "One Hundred lot" exemption.  The "Sales to Builders" exemption states that "the sale or lease" of any lots "to any person who acquires such lots for the purpose of engaging in the business of constructing. . . . or for the purposes of resale" are exempt.  15 U.S.C. §1702(a)(7).  The "One Hundred lot" exemption states that the Act "shall not apply" when a *subdivision*" being developed contains "fewer than one hundred lots which are not

exempt under Subsection (a)." (Juno's Mot. for Summ. J. 5)
(citing 15 U.S.C. § 1702(b)(1)) (emphasis supplied).
Importantly, Defendants contend, and Plaintiffs do not dispute,
that these exemptions work in combination and that lots that are
exempt under the "Sales to Builders" exemption are not counted
when calculating the "One Hundred Lot" threshold. 15 U.S.C.
§1702(b); (Juno's Mot. for Summ. J. 5; Pls.' Opp. 6.)

When interpreting exceptions to the Act, specifically
"when faced with an ambiguity regarding the scope of an
exemption [in the Act], the court must interpret the exemption
narrowly, in order to further the statutes' purpose of consumer
protection." *Pigott v. Sanibel Development, LLC,* 576 F.Supp.2d
1258, 1268 (S.D.Ala.,2008) *citing Taylor v. Holiday Isle, LLC,*
561 F.Supp.2d 1269, 1271 n.5 (S.D. Ala. 2008); See *Meridian
Ventures, LLC v. One North Ocean, LLC,* 538 F.Supp.2d 1359 (S.D.
Fla. 2007)); *see also Markowitz v. Northeast Land Co.,* 906 F.2d
100, 105 (3rd Cir. 1990) ("exemptions from remedial statutes
such as the Act are to be narrowly construed"); *Harvey,* 568
F.Supp.2d at 1362, 2008 WL 1843909, at *6 (holding that "under
federal law, exemptions under the [Act] must be narrowly and
strictly construed"). Following this principal, "[t]he language
of the Act is meant to be read broadly to effectuate" the
purposes of prohibiting fraud and protecting purchasers of land.
*Olsen v. Lake Country, Inc.,* 955 F.2d 203, 205 (4th Cir. 1991));

*See Pigott,* 576 F.Supp.2d at 1268 (holding the terms of the Act must "be applied liberally in favor of broad coverage.")  It is through this lens that the Court views the Act's exemptions.

Under the Act, the One Hundred Lot exemption applies to "subdivisions" with fewer than one hundred lots.  15 U.S.C. § 1702(b)(1).  The Act defines "subdivision" as land which is "divided into lots, whether contiguous or not, *for the purpose of sale or lease as part of a common promotional plan*."  15 U.S.C. § 1701(3).  Thus for the "One Hundred Lot" exemption to apply there may not be more than 100 lots as part of a "common promotional plan."  Congress created a presumption under the Act that units in a development are presumed to be part of a "common promotional plan," and thus part of the same subdivision:

> where such land is offered for sale by such a
> developer or group of developers acting in concert,
> and such land is contiguous, or is known, designated
> or advertised as a common unit or by a common name,
> *such land shall be presumed, without regard to the
> number of lots covered by each individual offering, as
> being offered for sale or lease as part of a common
> promotional plan*.

15 U.S.C. § 1701(4)(emphasis added); *See Pigott*,  576 F.Supp.2d at 1276.  In determining whether lots in a subdivision are part of a common promotional plan, the department of Housing and Urban Development ("HUD") developed a set of guidelines outlining the following factors, in addition to common ownership,: "(a) same or similar name or identity; (b) common

sales agents; (c) common sales facilities; (d) common advertising; and (e) common inventory." 61 Fed. Reg. at 13602, 1996 WL 134613; *See Pigott, 576* F.Supp.2d at 1277.  As the lots here were contiguous, the Development was advertised by the common name "Creighton Farms Community," and, as the Amended Complaint alleges, was marked by common "Juno/Ritz representatives," the burden is on the Defendants to rebut this presumption and show that the lots offered for sale were not part of a "common promotional plan" and the statutory exemption applies.

Juno argues that the Creighton Farms Community Development is exempt from the requirements of Act as fewer than 100 units of the development were subject to the "common promotional plan."  (Juno's Mot. for Summ. J. 6-8.)  The parties agree that the Development as a whole contained 164 lots, however, Juno argues that half of these lots were intended to be sold to contractors and qualify for the "Sales to Builders" exemption, leaving eighty-two lots available for sale to individuals.  (Juno's Mot. for Summ. J. 6.)  In essence, Juno contends that there were two separate and distinct promotional plans for eighty-two lots each.

In support of this argument Juno points to the Affidavit of Peter Alpert ("Alpert Affidavit") attached to its Summary Judgment Motion, Mr. Alpert, then Project Manager for

the Development, states "that the plan for development and sale of lots at [the Development] project originally was to sell at least half, or 82, of what were then a planned total of 164 lots to building contractors." (Alpert Aff. ¶6.) The HUD Guidelines state: "Developers of subdivisions containing more than 99 lots who wish to operate under this exemption must assure themselves *that all lots in excess of 99 have been and will be sold in transactions* [exempt under the Act]. . . . The sale of more than 99 lots in transactions not exempt [the Act] would nullify this exemption for prior and future sales and might result in prior sales being voidable at the purchaser's option." 61 FR 13596-01, 1996 WL 134613. Juno also asserts through the attached Declaration of Peter Alpert that, at the time of filing, thirty-one units had been sold, fourteen to contractors and seventeen to individuals. (Alpert Aff. ¶ 6.)[7]

Plaintiffs respond that these statements are not sufficient to overcome the presumption that the Development did not have a common promotional plant. The Development had over one hundred lots of contiguous land for sale, offered by a common group of developers and advertised with a common name,

_____

[7] Juno also assert two additional arguments dependent on the application of § 1702(b)(1). First, there should be no right of revocation under the Act as the right is contingent on defendants' failure to submit a property report along with the purchase agreement. If the One Hundred Lot Exemption applies there would be no disclosure requirement and thus no right of revocation. Second, Juno argues that as no property report was required, none of the promotional materials could be "inconstant" with the report. Both of these arguments are contingent on a finding that the Exemption applies which would bar the claim in the first instance.

"Creighton Farms Community", thus a "common promotional plan" is presumed to exist for all 164 units. (Pls.' Opp. 6.) Plaintiff Keith Nahigian avers that "any lot" was available for individual purchase - there were no specific lots set aside in the Development for builder- thus all 164 lots were part of the "common promotional scheme." (Pls.' Opp. 7, Ex. A, Affidavit of Plaintiff Keith Nahigian ("Nahigian Affidavit").) Additionally, the Plaintiffs point to an opinion letter from Juno's own general counsel to a creditor regarding the application of the Act which states "*in the event there are at least 65 sales to builders* [thereby lowering the number of available units to 99], it is our opinion that a Court of competent jurisdiction should hold that the Project qualifies for this [the One Hundred Lot] exemption." (Alpert Aff. Ex. 1.) (emphasis added.) Plaintiffs argue that, as the language of the letter acknowledges, "the event there are at least 65 sales to builders" would first need to occur *before* the Development would qualify for the "One Hundred Lot" exemption.

In a similar case cited by Plaintiffs, *Pigott* (576 F.Supp.2d 1258), the court rejected defendant's argument that a development qualified for the "One Hundred Lot" exemption. *Id*. 1276. There the development contained 108 unites in the same tower and were offered by the same developer under a common name. *Id*. The developer offered certain "company insiders" the

27

opportunity to purchase as many of the 108 lots as they chose, before opening the lots up to the general public. *Id.* Insiders purchased fourteen of the lots thereby lowering the number available to ninety-four. *Id.* In rejecting the defendant's argument that the development was not subject to the Act the Court found that the record reveled a "two-stage common promotional plan" because "there were not two differentiated pools of inventory." *Id. at* 1276-1277. In so ruling, that court took guidance from the HUD Guidelines factors cited above: "(a) same or similar name or identity; (b) common sales agents; (c) common sales facilities; (d) common advertising; and (e) common inventory." 61 Fed. Reg. at 13602 *Id.* citing 61 Fed. Reg. at 13602; *See also Paniaguas v. Aldon Companies, Inc.* 2006 U.S. Dist. LEXIS 63321 N.D. Ind. Sept. 5, 2006 (finding a common promotional plan where a development was for sale by a common developer and known by common names.)

Plaintiffs have raised facts sufficient to support a plausible claim under the Act and Juno has not overcome the presumption that the lots were sold as part of a common promotional plan. While Defendants may well have intended to sell half of the lots to developers on the facts before this Court there were not "two differentiated pools of inventory." Furthermore, all of the units were offered as part of the promotional plan for the Development as a whole with a similar

name, facilities, advertising and inventory.  Given that 15

U.S.C. § 1701(4) creates the presumption of a common promotional

scheme, and the lack of a factual record adequately developed

through discovery, at this stage of litigation the Court will

not dismiss Count II as alleged against Defendant Juno on this

basis.

b.  <u>Statute of Limitations</u>

Juno also argues the Plaintiffs' attempt to revoke a

sale pursuant to the Act is untimely as they did not seek

revocation until August 28, 2009, more than two years after

signing the purchase agreement on June 1, 2007.  Under § 1703(c-

d) of the Act, there is a two year statute of limitations for

revocation by right.  Plaintiffs argue that the general statute

of limitations for the Act (15 U.S.C. §1711) should apply

allowing three years to bring ILSA claims.  In a recent Eastern

District of Virginia case, the court found that "the three-year

limitation period of 15 U.S.C. § 1711 governs those

circumstances in which a purchaser seeks rescission that is not

automatic, but must be supported by proper proof."  *Plant v.*

*Merrifield Town Center Ltd. Partnership,* 2009 WL 2225415, *3

(E.D. Va. 2009.  The court went on to specifically reject

defendant's arguments in finding that "the scant case law

addressing these issues has incorrectly presumed that the *only*

ILSFDA revocation or rescission remedies are those automatic

revocation rights in § 1703(b), (c), and (d)."  *Id.*  Similarly, Plaintiffs here are not attempting to rescind the Agreement as of right but are merely bringing a claim under the Act seeking rescission.  The Amended Complaint was properly brought within the three year statute of limitations and is supported by the factual allegations sufficient to maintain it.  Given the state of the factual record at present this Court will deny Juno's Motion for Summary Judgment on Count II.

## 2.  Defendant Ritz's Motion to Dismiss

Defendant Ritz has separately moved to dismiss Count II on the grounds that Ritz was neither a "developer" nor an "agent" under the definitions of the Act.  This argument unlike Juno's motion, necessarily applies only to Ritz.  A private cause of action arises under the Act only against a "developer or agent."  15 U.S.C. § 1709(a).  Under the Act a "'developer' means any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision."  15 U.S.C. § 1701(5).  An "'agent' means any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision. . . ."  15 U.S.C. § 1701(6).

Ritz argues that, as it is undisputed that Plaintiffs purchased the property from Defendant Juno, Ritz could not, as a matter of law be a developer or agent.  (Ritz's Mot. 14) (citing

Amend Compl. ¶ 36.)  Specifically, Ritz claims that Plaintiffs
assert conclusory allegations with nothing more than a "naked
assertion devoid of further factual enhancement."  (Ritz's Mot.
14) (citing *Iqbal*, 129 S.Ct. at 1949.)  Ritz also argues that
even if these allegations are sufficient, they are contradicted
by the documents attached as Exhibit A to the Amended Complaint.
Specifically, the "Frequently Asked Questions" distributed by
the Development stating that Defendant Juno owned the "community
and common area and Club" (Amend. Compl. Ex. A at 17); that Juno
was the "principal developer behind The Ritz-Carlton Golf Club,
Creighton Farms" (Amend. Compl. Ex. A at 3); that the Club was
owned by Juno and managed "under a long-term agreement" with
Ritz (Amend. Compl. Ex. A at 5); and that the Homeowners
Association would be *managed* by Ritz (Amend. Compl. Ex. A at
15)(emphasis provided by Ritz).  (Amend. Compl., Ex A).

        Plaintiffs rebut this argument by pointing to the
statutory language defining "developer" as "any person who . . .
directly or indirectly. . . advertises for sale or lease any
lots in a subdivision."  15 U.S.C. § 1701(5).  Plaintiffs have
alleged numerous facts regarding the "Juno/Ritz" representatives
marketing the property, Ritz-Carlton advertising that was part
of the Development marketing plan including the Ritz logo on the
entry gate to the Development, brochures, documents and gifts.
(*See* Amend. Compl. ¶¶ 13-16.)  Ritz also collected a "fee" of

5.5% of the purchase price for lots sold in the Development.
(Amend. Compl. ¶ 6.)

In support of their interpretation of "developer"
Plaintiffs cite the case of *Hammar v. Cost Control Marketing and
Sales Management of Virginia*, 757 F.Supp. 698 (W.D. Va. 1990).
In *Hammer*, the district court considered a claim under the Act
involving the Lake Monticello subdivision that had several
"affiliates" involved in the project. The court found that the
Act "is to be liberally construed to effectuate its remedial
purpose." *Id.* at 706 citing *McCown v.* Heidler, 527 F.2d 204
(10th Cir. 1975). A defendant bank's motion for summary
judgment was denied as the court found that it could be
considered a developer as "when a financial institution allows
its name to be used in advertisement and announcements for a
development, it is in effect lending its prestige and good name
to the sales effort." *Id.* at 703-703. The court also noted
that the Act has been "construed to include all of those engaged
in the selling effort." *Id.* at 703. Here, Plaintiffs point to
the sales materials bearing the Ritz logo, and the
representations made by the "Juno/Ritz" representatives to show
that Ritz was very much involved in the "sales" and
"advertising" efforts.

At this stage of litigation, the Court finds
Plaintiffs' argument persuasive. The Amended Complaint alleges

facts sufficient to state a plausible claim that Ritz was "any person" who "directly or indirectly. . . advertis[ing] for sale or lease any lots in a subdivision" especially the near universal prevalence of the Ritz name and logo, and the numerous misrepresentations made by "Juno/Ritz" personnel.  Ritz is thus sufficiently alleged to be a "developer" under the Act and its Motion to Dismiss Count II is denied.

## IV.  Conclusion

For these reasons, the Court will, deny Defendant Juno-Loudoun, LLC's Motion to Dismiss, deny Juno-Loudon's Motion for Summary Judgment and deny Defendant Ritz-Carlton Hotel Company, LLC's Motion to Dismiss.  An appropriate Order will issue.

<table>
<tr><td></td><td>/s/</td></tr>
<tr><td>January 19, 2010</td><td>James C. Cacheris</td></tr>
<tr><td>Alexandria, Virginia</td><td>UNITED STATES DISTRICT COURT JUDGE</td></tr>
</table>