IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

KEITH NAHIGIAN     )
COURTNEY NAHIGIAN,    )
           )
  Plaintiffs,      )
           )
    v.        )
           )   1:09cv725 (JCC)
JUNO-LOUDON, LLC., *et al.,*  )
           )
  Defendants.     )

# M E M O R A N D U M  O P I N I O N

This matter is before the Court on Defendant Ritz-
Carlton Hotel Company LLC's Motion for Partial Summary Judgment.
Plaintiffs have brought suit against Defendants for rescission
and damages pursuant to the Interstate Land Sales Full
Disclosure Act ("ILSFDA" or the "Act") and various related state
law claims.  Defendant Ritz-Carlton Hotel Company, LLC. ("Ritz")
has moved for Summary Judgment on Count II, the alleged ILSFDA
violation (15 U.S.C. § 1701 *et seq.*).  At issue on summary
judgment with respect to the ILSFDA claim is whether the Act's
exemption for developments containing less than one hundred lots
applies where, as here, the development contains one hundred and
sixty-four lots and Defendants purportedly "originally intended"
to, though have as of yet failed to, sell half of the these lots
as exempted lots through sales to "builders."

1

For the reasons that follow the "One Hundred Lot Exemption" does not apply to the Development thus Defendant Ritz's Motion for Partial Summary Judgment as to Count II is denied.

## I. Background

In May 2005, The Ritz-Carlton Company, LLC ("Ritz") had entered into a Transaction Agreement with Juno-Loudon ("Juno") where it agreed to manage "the process and standards utilized by Broker and its personnel in the marketing and sale of the lots. . ." (Amend. Compl. ¶ 6) for a real estate development called "The Estates at Creighton Farms" in Loudon County, Virginia (the "Development"). (Amend. Compl. ¶ 2.) The Development contained approximately 164 lots (Mem. in Supp. of Mot. for Summ. J. Statement of Facts ¶ 2) there is a "single, common promotional plan covering the marketing and sales of [these] lots." (Mem. in Supp. of Mot. for Summ. J. Statement of Facts ¶ 4.)

There is no evidence before the Court that Defendants filed a Statement of Record or HUD Property Report with the Department of Housing and Urban Development ("HUD"), containing the disclosures required by the ILSFDA. (Amend. Compl. ¶ 40.) On June 1, 2007, in reliance on representations made by "Juno/Ritz" sales representatives, and without the benefit of the ILSFDA disclosure protections, Plaintiffs signed a Purchase

Agreement (the "Agreement") ((Amend. Compl. ¶ 24; Amend. Compl. Ex. B (Agreement)) and, closed on the Property, an unimproved parcel at 22616 James Monroe Highway, Aldie, Virginia 20105, in Loudoun County, Virginia (the "Property") under the terms of the Agreement on July 1, 2007. (Amend. Compl. ¶ 25.) Further, the Agreement did not contain ILSFDA required provisions informing Plaintiffs of their various rights of revocation under the Act and the Plaintiffs were not provided with a HUD Property Report prior to their purchase. (Amend. Compl. ¶ 40; Amend. Compl. Ex. A.)

Plaintiffs filed an Amended Complaint on August 28, 2009. On January 29, 2010 Defendant Ritz filed the instant Motion and waived hearing. On February 8, 2010 Plaintiffs Opposed. Defendants replied on February 16, 2010. Defendant Ritz's Motion for Partial Summary Judgment as to Count II is now before the Court.

## II. Standard of Review

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Triton Marine Fuels Ltd., S.A. v. M/V PACIFIC CHUKOTKA*, 575 F.3d 409, 412 (4th Cir. 2009)(holding that summary judgment is proper "if the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."). The party seeking summary judgment has the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v.* 477 U.S. at 248. To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248 (quotation omitted). "In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial." *Kennedy v. Joy Technologies, Inc*., 269 Fed. Appx. 302, 308 (4th Cir. 2008) (citing *Maryland Highways Contractors Ass'n, Inc. v. State of Maryland,* 933 F.2d 1246, 1251 (4th Cir. 1991) (noting that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment")). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *see also Lettieri v. Equant Inc*., 478 F.3d 640, 642 (4th Cir. 2007).

## III. Analysis

Plaintiffs' Complaint states a number of causes of action against Defendants. Ritz's Motion for Partial Summary Judgment addresses only Count II alleging ILSFDA. Defendant Ritz does not argue that it complied with the requirements of the ILSFDA; rather, it argues that the ILSFDA disclosure and reporting requirements did not apply to the Development because of two specific statutory exemptions. For the reasons below, the subdivision at issue is not exempt from ILSFDA's reporting and disclosure requirements. Thus, Ritz's Motion for Summary Judgment on this issue is denied.

### A. Statutory History

The Interstate Land Sales Full Disclosure Act was enacted as part of the Housing and Urban Development Act of 1968 and amended in 1979. *See* Pub.L. No. 96-153, Title IV, 93 Stat. 1122 (1979). The Act is "an antifraud statute utilizing disclosure as its primary tool with the principal purpose of protect[ing] purchasers from unscrupulous sales of undeveloped home sites." *Kamel v. Kenco/The Oaks at Boca Raton LP*, 321 Fed. Appx. 807, 809 (11th Cir. 2008) (citations omitted). ILSFDA was designed to "prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." *Flint Ridge*

*Dev. Co. v. Scenic Rivers Ass'n of Okla.,* 426 U.S. 776, 778
(1978).

The Act makes it unlawful for a developer of a covered
"subdivision" [1] to use of "any means or instruments of
transportation or communication in interstate commerce, or of
the mails . . . to sell or lease any lot unless a statement of
record with respect to such lot is in effect . . . [and] a
printed property report . . . has been furnished to the
purchaser or lessee in advance of the signing of any contract or
agreement by such purchaser or lessee." 15 U.S.C. § 1703(a)(1).
The "statement of record" must contain specific disclosures to
the potential purchaser. 15 U.S.C. § 1705. The developer must
provide the property report to the purchaser prior to executing
the purchase agreement. 15 U.S.C. § 1703(a)(1)(B). If the
developer fails to do so, the purchaser has the option of
revoking her contract within two years of the date of signing.
15 U.S.C. § 1703(c). The purchaser's right of revocation must
be acknowledged in their purchase agreement. 15 U.S.C. §
1703(c). "Congress designed ILSFDA to protect purchasers of
land from fraud by requiring sellers to make certain disclosures
in advance of a purchaser's signing the sales contract." *Ahn v.*

---

[1] The Act defines "subdivision" as land which is "divided into lots . . .
whether contiguous or not*, for the purpose of sale or lease as part of a
common promotional plan.*" 15 U.S.C. § 1701(3). As discussed above, the
Development lots are part of a common promotional plan and thus constitute a
"subdivision" within the meaning of the Act and its exemptions.

*Merrifield Town Center Limited Partnership,* 584 F.Supp.2d 848,

853 (E.D. Va. 2008). "Through ILSFDA's disclosure

requirements, Congress intended to ensure that, '*prior to*

*purchasing* certain types of real estate, a buyer [is] apprised

of the information needed *to make an informed decision*.'" *Id.*

(citing *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 103 (3rd Cir.

1990)(emphasis in original)).

### 1. Facial Applicability of ILSFDA

The Act applies to "subdivisions" which is defined as

"any land . . . divided or is proposed to be divided into lots,

whether contiguous or not, for the purpose of sale or lease as

part of *a common promotional plan*." 15 U.S.C. § 1701(3)

(emphasis added). A "common promotional plan" is defined as "a

plan, undertaken by a single developer or a group of developers

acting in concert, to offer lots for sale or lease." 15 U.S.C.

§ 1701(4). Congress created a presumption under the Act that

units in a development are considered part of a "common

promotional plan" (and thus part of the same subdivision):

> where such land is offered for sale by such a
> developer or group of developers acting in concert,
> and such land is contiguous, or is known, designated
> or advertised as a common unit or by a common name,
> *such land shall be presumed, without regard to the*
> *number of lots covered by each individual offering, as*
> *being offered for sale or lease as part of a common*
> *promotional plan.*

15 U.S.C. § 1701(4)(emphasis added); *See Pigott v. Sanibel Development, LLC*, 576 F.Supp.2d 1258, 1276 (S.D.Ala. 2008). The 164 lots here were contiguous, promoted using common marketing materials by a common marketing staff, advertised under a common name, and furthermore, Defendant Ritz concedes that "[s]ince the inception of the Creighton Farms development project, there has been a single, common promotional plan covering the marketing and sales of lots." (Ritz's Mem. Facts ¶ 4.) The burden is thus on the Defendants to rebut this presumption and show that that some statutory exemption or exemptions apply to shield the Development from the requirements of the Act. They have not met this burden.

2. <u>Statutory Exemptions</u>

There are two types of exemptions from the requirements of ILSFDA: (1) full statutory exemptions, set forth in 15 U.S.C. § 1702(a), which discharge a developer from the Act's disclosure and registration requirements as well as its antifraud provisions; and (2) partial statutory exemptions, set forth in 15 U.S.C. § 1702(b), which exempt a developer from the Act's disclosure and registration requirements, but not its anti-fraud provisions. "Importantly, these exemptions [], must be narrowly construed to ensure that Congress's "essential purpose in enacting ILSFDA's remedial provisions is not frustrated." *Ahn*, 584 F.Supp.2d at 854(citing *Olsen v. Lake*

*Country, Inc.,* 955 F.2d 203, 206 (4th Cir. 1991) (finding that

ILSFDA exemptions, like all exemptions from remedial statutes,

"are to be construed narrowly")); *See Markowitz v. Northeast*

*Land Co.,* 906 F.2d 100, 105 (3rd Cir.1990) ("exemptions from

remedial statutes such as the Act are to be narrowly

construed"); *Harvey v. Lake Buena Vista Resort, LLC,* 568

F.Supp.2d 1354, 1362 (M.D. Fl. 2008)("Under federal law,

exemptions under the ILSFDA must be narrowly and strictly

construed"); *Pigott v. Sanibel Development, LLC,* 576 F.Supp.2d

1258, 1268 (S.D. Ala., 2008)(holding "when faced with an

ambiguity regarding the scope of an exemption [in the Act], the

court must interpret the exemption narrowly, in order to further

the statutes' purpose of consumer protection")(citing *Taylor v.*

*Holiday Isle, LLC,* 561 F.Supp.2d 1269, 1271 n. 5 (S.D.

Ala.2008)); *See also Meridian Ventures, LLC v. One North Ocean,*

*LLC,* 538 F.Supp.2d 1359 (S.D.Fla.2007)). It is through this

lens that the Court views the Act's exemptions.

The two statutory exemptions at issue here are the

"One Hundred Lot Exemption" (§ 1702(b)) and the "Sales to

Builders Exemption" (§ 1702(a)). The "One Hundred Lot

Exemption" set forth in 15 U.S.C. § 1702(b)(1) provides, in

pertinent part:

> Unless the method of disposition is adopted for the
> purpose of evasion of this chapter, the provisions
> requiring registration and disclosure ... shall not

> apply to the sale or lease of lots *in a subdivision containing fewer* than one hundred lots which are not exempt under [§ 1702(a)].

15 U.S.C. § 1702(b)(1) (emphasis added). The Development is comprised of 164 lots in total, thus does not comport with the requirements of the One Hundred Lot Exemption unless combined with additional exemptions. To overcome the presumption that ILSFDA applies to the Development, Ritz must show that there are sixty-five (65) lots that qualify for an exemption under 1701(a), bringing the number non-exempt lots available in the Development to ninety-nine (99). Ritz proposes to do this through 15 U.S.C. § 1702(a)(7), known as the "Sales to Builders Exemption."

The Sales to Builders Exemption states that "[u]nless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to . . . (7) the sale or lease of lots to any person who acquires such lots for the purpose of engaging in the business of constructing . . . or for the purposes of resale." 15 U.S.C. § 1702(a)(7). It is not disputed by the parties that there were one and sixty-four (164) lots available for sale at the Development. (See Ritz's Mem. Facts ¶ 4.) At the time the Complaint was filed, thirty-one lots had been sold, seventeen to non-builders and only fourteen to builders. (Ritz's Mem. Facts ¶¶ 7-8.) On these facts alone, the one hundred lot exemption

10

does not apply to the Development.  Ritz argues, however: (1) that when the developer intends that certain lots will be sold to builders at some future date they must be considered "exempt" under 15 U.S.C. § 1702(a)(7) and thus the One Hundred Lot Exemption applies to the Development, and (2) that Ritz has offered sufficient evidence so that no genuine issue of material fact exists regarding this intent to sell to builders.  (See Mem. at 4.)  To determine the meaning of these exemptions, the Court will first turn to the plain language of the statute.

### B.  Plain Language

When engaging in statutory interpretation, the Court must "first and foremost strive to implement congressional intent by examining the plain language of the statute." *U.S. v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (citing *United States v. Passaro,* 577 F.3d 207, 213 (4th Cir. 2009)). "[A]bsent ambiguity or a clearly expressed legislative intent to the contrary," this Court shall give a statute its "plain meaning." *Id.* (citing *United States v. Bell,* 5 F.3d 64, 68 (4th Cir. 1993)).  A statute's plain meaning is determined by reference to its words' "ordinary meaning at the time of the statute's enactment." *Id.* (citing *United States v. Simmons,* 247 F.3d 118, 122 (4th Cir. 2001)).  This Court is mindful that in "interpreting the plain language of a statute, we give the terms their ordinary, contemporary, common meaning, absent an

indication Congress intended" the statute's language "to bear some different import." *Id.* (quoting *Stephens ex rel. R.E. v. Astrue,* 565 F.3d 131 (4th Cir. 2009) (internal quotations omitted)).

The plain language of the One Hundred Lot Exemption, 15 U.S.C. § 1702(b), is clear. ILSFDA's registration and disclosure requirements do not apply to "the sale or lease of lots in a subdivision *containing* fewer than one hundred lots which *are* not exempt under subsection (a)." *Id.* (emphasis added). The statute is drafted in the present tense. A Development will be exempt from ILSFDA's disclosure and reporting requirements if it is a "subdivision containing" fewer than one hundred lots which *are* currently exempt under § 1702 subsection (a).

The plain language of the subsection (a) exemption at issue here, the Sales to Builders exemption, states that "[u]nless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to. . . (7) the sale or lease of lots to any person who acquires such lots for the purpose of engaging in the business of constructing . . . or for the purposes of resale." 15 U.S.C. § 1702(a)(7). The statute does not state that the intended, but not yet completed, future sale or lease of a lot to a builder is "exempt." The plain language indicates that

12

§ 1702(a)(7) is intended to exempt only the actual "sale or lease" of a lot, rather than the uncertain future sale. Here, the "sale or lease" of 65 lots "for the purpose of engaging in the business of constructing" has not occurred. Narrowly construing the statutory text, this Court finds that by its plain language, the Sales to Builders exemption does not encompass hoped for future sales to builders "that have yet to occur." (See Mem. at 7) (describing the lots at issue as "sales that have yet to occur.") Such potential future sales are merely speculative and are not "exempt" under § 1702(a)(7) as they are not yet "sales." As they are not "exempt under subsection (a)," they do not bring the total non-exempt lots of the Development below the 100 lot threshold necessary to qualify for the One Hundred Lot Exemption under 15 U.S.C. § 1702(b). By its plain language, ILSFDA applies to the Development and the exemptions at issue in this motion, by their plain language, do not.

### C. Extrinsic Evidence

Defendant Ritz asks the Court to look beyond the plain language of the statute and argues that the Sales to Builders Exemption applies because "[t]he plan for development and sale of lots at 'The Estates of Creighton Farms' project originally was to sell at least half, or 82, of what were then total of 164 lots, to building contractors." (Ritz's Mem. at 5

citing sworn declaration of Peter Alpert (Exhibit 1 to its Memorandum in Support of Ritz's Motion to Dismiss) ("Alpert Dec.") ¶ 6.)  Ritz's argument is premised on its interpretation of HUD guidelines regarding ILSFDA, as well as recent case law in a different district that has partially adopted Ritz's view. Although the Court finds the plain language of the statute dispositive, it will nonetheless explore this line of argument.

### 1.  Congressional Intent

Congress's purpose in enacting ILSFDA provides a compelling reason why speculative "future sales" of certain lots to builders should not be considered "exempt" for purposes of applying the One Hundred Lot Exemption to developments that are otherwise subject to ILSFDA's disclosure and reporting requirements.  Congress enacted ILSFDA in the wake of "wholesale interstate land fraud" perpetrated on a number of "unsuspecting and ill-informed investors and consumers."  *Ahn*, 584 F. Supp.2d at 853 (citing James L. Olivier, Note, *Beyond Consumer Protection: The Application of the Interstate Land Sales Full Disclosure Act to Condominium Sales,* 37 U. Fla. L. Rev. 945, 946 (1985) (citing *Interstate Land Sales Full Disclosure Act, 1966; Hearings on S. 2672 Before the Subcomm. on Securities of the S. Comm. on Banking & Currency,* 89th Cong., 2d Sess. (1966)); *see also* William P. Sklar & Jennifer L. Dolce, *The Interstate Land*

*Sales Full Disclosure Act's Two-Year Completion Exemption,* 73-
FEB Fla. B.J. 56 (1999); 118 A.L.R. Fed. 647 (1994)).

Congress titled the Act, the Interstate Land Sales
Full Disclosure Act, and as the name implies, Congress intended
it to protect purchasers of undeveloped land through disclosure;
prohibiting fraud in land sales "by requiring sellers of land,
*inter alia*, to make certain disclosures *in advance of a
purchaser's signing the sales contract.*" *Ahn*, 584 F.Supp.2d at
853 (emphasis added); See 17 U.S.C. §§ 1701-1720. The
provisions of the Act primarily impose duties on sellers prior
to the signing of a purchase agreement and create protections
for purchasers at the time the purchaser enters into the
contract. Prior to the sale of a lot, Developers must file a
public "statement of record" (§§ 1703(a)(1)(A), 1704-1706),
submit a property report to the purchaser in advance of their
entering into a purchase agreement (§§ 1703(a)(1)(B), 1707), and
may not advertise or promote the property to the potential
purchaser in a way contrary to the information disclosed in the
report (§ 1703(a)(1)(D)). All of these strictures are imposed
prior to the sale of any lot to purchaser and are designed to
provide purchaser with the critical information necessary to his
decision to enter into a purchase agreement.

Prior to the purchase of a lot, a potential purchaser
has certain rights under ILSFDA to protect them from making an

uninformed decision.  The purchaser has a right to know, prior to signing the purchase agreement, that the agreement can be revoked as of right under certain circumstances. (See 15 §§ 1703(b), 1703(c))  These provisions reflect "Congress's recognition that the need for buyer protection is critical prior to the time the buyer makes the decision to sign and incur obligations." *Ahn*, 584 F.Supp.2d at 854-855 (holding that the timing of a specific exemption begins to run at the time the purchaser signs the purchase agreement, rather than at some later time when the developer ratifies the agreement).

It follows that if the duties and rights imposed by the Act vest prior to (or contemporaneously with) entering into a purchase agreement, the specifically delineated exemptions should also be examined at the time the parties enter into the purchase agreement.  A development is exempt from ILSFDA if it is a "subdivision *containing* fewer than one hundred lots which *are* not exempt under subsection (a)."  15 U.S.C. § 1702(b)(1). When determining whether or not the subdivision is one "containing fewer than one hundred units," the number of non-exempt lots in the subdivision should be determined contemporaneously with when the purchaser enters into the purchase agreement for the lot in the subdivision.   Similarly, when determining which lots should be considered non-exempt under subsection (a) the Act specifically exempts "the sale or

lease of lots to any person who acquires such lots for the purpose of engaging in the business of constructing. . . . or for the purposes of resale." 15 U.S.C. § 1702(a)(7). Congress designed ILSFDA's disclosure and reporting requirements, and the right of a potential purchaser to be made aware of these disclosures and their rights of revocation, to take effect prior to and at the time of the signing of a purchase agreement. See *Ahn,* 584 F.Supp.2d at 853. Determining whether or not these rights and duties exist based on certain exemptions must also be determined at this time so that Congress' intent is not frustrated.

If Ritz's reading of the statute was correct, a purchaser's rights to full disclosure of the rights of revocation and complete information in the form of the property report could be vitiated simply by a developers' stated (but unfulfilled) intention to later sell sufficient lots to builders, therefore bypassing Congress' intent to protect potential purchasers through pre-purchase disclosure. For example, if a development contained 150 lots for sale and the developer claimed an intention to sell 51 lots to builders, the purchaser of the first lot, "Lot 1," would not be notified of his right of revocation with seven days (per § 1703(b)) or two years (per § 1703(c)), nor would purchaser be provided with the required property report *prior* to entering into the agreement

17

(per §§ 1703(a)(1)(B), 1707). Three years later, if the developer had failed to sell any lots to builders and sold the 100th non-exempt lot to an individual homebuyer, the development would be subject to ILSFDA. The purchasers of the first 99 lots, however, would not have benefited from the full disclosure and reporting requirements of the Act prior to purchasing their lots, nor would they have been able to exercise the rights of revocation that Congress intended to protect them. See *Flint*, 426 U.S. at 778; *Ahn*, 584 F.Supp.2d at 853. This reading of the statute goes against its plain meaning as well Congress's clear intent to require developers to provide "full disclosure" of information to potential purchasers, submit a property report to HUD, and alert purchasers to their rights of revocation *prior* to the purchaser entering a purchase agreement.

The alternative reading of the statute informed by its plain meaning and faithful to Congress's intent is that: (1) ILSFDA presumptively applies to subdivisions; (2) the Development is a subdivision; (3) The Development has 164 Lots; (4) only 14 exempt Lots have been sold; (5) the subdivision now contains 150 lots not yet "exempt under subsection(a)"; thus (6) the one hundred lot exemption does not apply. If at some later time, the "sale or lease" of a 65th lot "for the purposes of construction" did occur, the development would be exempt from ILSFDA as it would no longer be a "subdivision *containing* fewer

18

than one hundred lots which *are* not exempt under subsection(a)"
and thus be exempt from ILSFDA.  See 15 U.S.C. §1702(b).

As previously held in this District, "Congress
intended to ensure that, 'p*rior to purchasing* certain types of
real estate, a buyer [is] apprised of the information needed *to
make an informed decision.*'" *Ahn*, 584 F.Supp.2d at 853 (quoting
*Markowitz v. Ne. Land Co.,* 906 F.2d 100, 103 (3d Cir.1990)
(emphasis in original); See also *Cost Control Mktg. & Mgmt.,
Inc. v. Pierce,* 848 F.2d 47, 48 (3d Cir.1988); *Law v. Royal Palm
Beach Colony, Inc.,* 578 F.2d 98, 99 (5th Cir.1978) (noting that
ILSFDA "ensures that a buyer, *prior to purchasing* certain kinds
of real estate, is informed of facts which will enable him to
make an informed decision about purchasing the property"
(emphasis added)); 54A Am. Jur. 2d Monopolies and Restraints of
Trade § 1315.)  Exemptions to ILSFDA must be narrowly construed,
and the broad reading of these exemptions that Ritz proposes
would serve to delay or destroy the rights and obligations
created by ILSFDA for non-exempt subdivisions, going against the
clear intent of Congress.  The alternate reading outlined above
would enforce the disclosure and reporting requirements of
ILSFDA and narrowly construe the exemptions ensuring that
Congress's intent is followed.

## 2. <u>Administrative Guidelines</u>

Ritz also argues that its interpretation of the Sales to Builders and One Hundred Lot Exemption is supported by guidelines published by HUD. As an initial matter, this Court must determine what weight to give the HUD guidelines. "Because HUD is the agency responsible for enforcement of ILSFDA, its regulations 'are entitled to *Chevron* deference as an authoritative interpretation of the statute unless. . . it appears form the statue or its legislative history that the agency interpretation is not one that Congress would have sanctioned.'" *Ahn*, 584 F.Supp.2d at 855 n.15, (citing *Danilov v. Aguirre,* 370 F.supp.2d 441, 444 (E.D. Va. 2005); *Chevron U.S.A. Inc.*, v. *Natural Res. Def. Council*, *Inc.*, 467 U.S. 837 (1984). On the other hand, "an administrative agency's guidelines are interpretive rules entitled to "some deference" in the judicial interpretation of a statute within the Agency's purview. *Ahn*, 584 F.Supp.2d at 856 n. 18 (citing *Reno v. Koray,* 515 U.S. 50, 61 (1995) (holding that an internal agency guideline is entitled to "some deference" so long as it is a "permissible interpretation of the statue"). A court in this District has already determined that the HUD Guidelines at issue here, (61 Fed. Reg. 13596, 13604 (March 27, 1996)), are "interpretive rules" and should simply be given "some deference" in the Court's interpretation of the statute. *Ahn*, 584

F.Supp.2d at 856 n. 18 (citing *Reno v. Koray,* 515 U.S. at 61);

*see also Christensen v. Harris County*, 529 U.S. 576, 587

(2000)(noting that enforcement guidelines, are "entitled to

respect . . . but only to the extent that those interpretation

have the power to persuade")(internal citations omitted).

Similarly, this Court will give the guidelines cited by Ritz

some deference here; however, the language of the guidelines

cannot trump the language of the statute.

Ritz's argument hinges on two portions of the HUD

guidelines.  First, the guidelines give an example of the

application of the One Hundred Lot Exemption.   In the example,

a subdivision containing 130 lots would qualify "if at least 30

lots are sold in transactions that are exempt."  61 FR at 13604.

The guidelines state that the exemptions may be "either past or

future sales" and that "this exemption for prior and future

sales and might result in prior sales being voidable at the

purchaser's option."  *Id.*  Second, the guidelines elaborate on

the example above stating that the thirty exempt lots could

qualify through a combination of exemptions; twelve lots with

completed "residential structures" on them, nine sold to

building contractors, and "at least nine lots were reserved for

either the construction of homes by the developer or for sales

to building contractors.  The reserved lots need not be

specifically identified."  *Id.*

Ritz also cites a resent Southern District of New York decision, *Bodansky v. Fifth on the Park Condo*, Nos. 09cv4651 (DLC), 09cv6433(DLC), 2010 WL 334985 (S.D.N.Y., Jan. 29, 2010), where the court, citing to these guidelines, found that a 160 unit development did not need to be a "subdivision" containing fewer than 100 non-exempt lots at the time the plaintiff's purchase agreement was signed.  Instead the court held that, as a temporary certificate of occupancy had been issued for the development, "the remaining 70 [unsold] units in the Condominium will necessarily qualify for the Improved Lot Exemption pursuant to § 1702(a)(2)."  *Bodansky*, 2010 WL 334985 at *8.  While distinct from the instant case because the disposition of the 70 unsold condominium units had been determined but not yet accomplished, the *Bodansky* court did find that such a "future sale" constituted an "exempt" unit for purposes of applying the One Hundred Lot Exemption.  This Court disagrees with the *Bodansky* court's reading of the statute.  Furthermore, the decisions of courts in other Districts are not binding upon this Court.  This Court is more persuaded by the logic of the Eastern District of Virginia case of *Ahn*, then that of the court in *Bodansky*.

While relevant to the Court's analysis, the language of HUD's guidelines relevant to the application of the One Hundred Lot Exemption does not supplant the language of the

applicable exemptions themselves.  Congress chose not to draft
the exemption to take into account the "past or future sale [or
lease]" of exempted lots but instead only exempted "subdivisions
*containing* fewer than one hundred lots which *are* not exempt
under subsection (a)."  15 U.S.C. § 1702(b).  Congress could
easily have chosen to exempt "subdivisions containing *or that in
the future will contain* fewer than one hundred lots which are
not exempt under subsection(a)."  It did not do so.  In drafting
the Sales to Builders exemption, Congress chose to only exempt
the "sale or lease" of lots to builders not lots that were
merely "reserved" for builders or that the developer intended
to, or hoped to, later to sell to builders.  15 U.S.C.
§ 1702(a).  Again, Congress could have drafted a broader
exemption applying to "those lots reserved by the developer for
sale or lease to any person who acquires such lots for the
purpose of engaging in the business of construction . . . ."
Congress did not do so.

While this Court gives some deference to the HUD
guidelines, the administrative agency's guidance is not
determinative here.  The Court must "narrowly construe" the
exemptions so that Congress's "essential purpose in enacting
ILSFDA's remedial provisions is not frustrated."  *Ahn*, 584
F.Supp.2d at 854(citing *Olsen v. Lake Country, Inc.,* 955 F.2d
203, 206 (4th Cir. 1991) (finding that ILSFDA exemptions, like

all exemptions from remedial statutes, "are to be construed narrowly")).  The Act was designed to "prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.,* 426 U.S. 776, 778 (1978).  This Court will not ignore the language of the statute and abrogate Congress's intent for full disclosure to individuals *prior* to their purchase of undeveloped real estate by broadly construing the language of the statutory exemptions at issue here.[2]

### 3.   Other Considerations

In addition to the reasons discussed above, Ritz's argument fails on alternative grounds.  Accepting Ritz's interpretation of the statutory exemptions as correct, there remain two genuine issues of material fact that would preclude summary judgment at this stage.  First, there is a genuine issue of material fact regarding the existence of a plan to sell half of the lots in the development to builders.  Defendant Ritz offers the sworn testimony of Peter Alpert in support of this point.  Alpert states that the plan for "'The Estates of

---

[2] While this Court only gives these guidelines "some deference" it would reach the same determination using *Chevron* deference as "it appears from the statute . . . that the agency's interpretation is not one that Congress would have sanctioned."  *Danilov v. Aguirre,* 370 F.Supp.2d at 444 (E.D. Va. 2005)(citing *Chevron U.S.A. Inc.,* v. *Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984).

Creighton Farms' project originally was to sell at least half, or 82, of what were then planned total of 164 lots, to building contractors." (Ritz's Mem. at 5 citing Alpert Dec. ¶ 6.) Defendant Ritz also offers a May 2005 Opinion Letter from Defendant Juno's counsel to a potential investor stating that "it is the Developer's intent to sell at least 82 of the 164 lots . . .to builders . . . . In the event there are at least 65 sales to builders, it is our opinion . . . that the [Development] qualifies for [the One Hundred Lot] exemption."[3] (Alpert Dec. ¶ 6, Ex. 1.) Mr. Alpert's knowledge of the original "plan" is derived from due diligence performed subsequent to the Plaintiffs' purchase, not contemporaneous with the creation of the plan. The letter addresses what Defendants might do, but is not a statement of the Defendants themselves, nor is it sufficient to definitively resolve the issue of fact at this stage of litigation.

Plaintiffs dispute the weight of these submissions. Specifically arguing that a genuine issue of material fact exists regarding the existence of Defendants' purported plan to sell "at least half" of the units to builders. "If a developer elects to take advantage of an [ILSFDA] exemption, the developer is responsible for maintaining records to demonstrate that the requirements of the exemption have been met." 24 C.F.R. §

_____

[3] The Court notes that the Opinion Letter appears to indicate that the 65 sales to builders must be completed before the exemption applies.

1710.4(d).  No such records have been submitted to this Court.
Even if this Court were to adopt Ritz's view of the relevant
ILSFDA exemptions, which it does not, summary judgment would be
precluded as a genuine issue of material fact exists regarding
the existence of a "plan" to sell half of the lots.

Additionally, both of the exemptions put forward by
Ritz can apply "unless the method of disposition is adopted for
the purpose of evasion [of ILSFDA]."  15 U.S.C. § 1702.
Specifically, courts have found that if "a seller's method of
disposition is adopted for the purposes of evading the ILSFDA's
requirements, the seller is not entitled to any exemption found
in section 1702."  *Gentry v. Harborage Cottages-Stuart, LLP,* 602
F.Supp.2d. 1239, 1247 (S.D.Fla. 2009).  Plaintiffs argue that
the sale of lots builders was merely a pass-through designed to
evade the ILSFDA disclosure requirements.  (Response at 4.)
Here, there is a genuine issue of material fact regarding
whether or not the actual sales to builders, as well as the
purported plan to sell at least half of the lots to builders
where simply a "method of disposition [] adopted for the purpose
of evasion of this chapter."  Summary Judgment would not be
appropriate at this time.

## IV.  Conclusion

As the Development is a subdivision containing more
than one hundred non-exempt lots available for sale under a

common promotional plan, 15 U.S.C. § 1702(b)(1) does not apply.

Defendant Ritz's Motion for Partial Summary Judgment as to Count II is denied.  An appropriate Order will issue.

|                          | /s/                                    |
|--------------------------|----------------------------------------|
| March 30, 2010           | James C. Cacheris                       |
| Alexandria, Virginia     | UNITED STATES DISTRICT COURT JUDGE      |